AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
MAR 21 2018
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

One Samsung Galaxy J3 Prime Cellular Telephone
MSISDN: 16615745375
IMEI: 355603085713750

Case No. **18MJ1320**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841, 846, 952, 960, and 963 | Importation of Controlled Substances, Distribution of Controlled Substances, and Conspiracy |

The application is based on these facts:
See attached Affidavit of HSI Special Agent Donald Sweet.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Donald Sweet, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/21/18

City and state: San Diego, CA

_____
Judge's signature

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Donald Sweet, having been duly sworn do hereby state that the following is true to my knowledge and belief.

### Introduction

1. I make this affidavit in support of an application for a search warrant for the following cellular phone, described more specifically in Attachment A:

> One Samsung Galaxy J3 Prime Cellular Telephone
> MSISDN: 16615745375
> IMEI: 355603085713750
> (the **Subject Phone**)

for items that constitute evidence, fruits, and instrumentalities of 21 USC §§ 841, 846, 952, 960, and 963 (Distribution of Controlled Substances, Importation of Controlled Substances, and Conspiracy), as described in Attachment B to the search warrant.

2. The **Subject Phone** was seized from Jesus Mora-Peinado at the Otay Mesa Port of Entry on July 28, 2017, and is currently being stored as evidence in the custody of the Department of Homeland Security, Homeland Security Investigations (HSI) secure evidence storage facility located at HSI's San Diego, California Office.

3. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, interviews, subpoenaed and public records, database checks, and other investigations. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested search warrant application. Conversations and discussions below are set forth in substance unless noted.

### Training and Experience

4. I am a Special Agent with HSI, and have been so employed since February 2016. Prior to my employment with HSI, I was employed as a Border Patrol Agent with the United States Border Patrol (USBP) from July 2009 until February 2016. In my current position with HSI, my duties include investigating the trafficking of federally

controlled substances. During my experience in law enforcement, I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances. I have also had training about the use of cellular telephones and other electronic devices by narcotics smugglers in the normal course of their illicit activities. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations.

## Facts Supporting Probable Cause

5. On July 28, 2017, at about 6:45 pm, Mora applied for admission into the United States from Mexico at the Otay Mesa Port of Entry. Mora was the driver and sole occupant of a 2001 Honda Civic (California License Plate No. 7VEU936). The Civic contained a California Certificate of Title and California DMV Registration Card listing "Blake Davis" of Santa Maria, California as the registered owner of the vehicle.

6. During inspections at the Port of Entry, CBP Officer W. Lara recovered 57 packages of a crystalline substance from the driver and passenger side quarter panels of the 2001 Honda Civic. Subsequent laboratory testing demonstrated that the packages contained approximately 24.1 kilograms of methamphetamine.

7. Mora was arrested. The **Subject Phone** was seized from Mora's car at the time of his arrest.

8. I, along with HSI Special Agent M. Nelson, advised Mora of his Miranda rights. Mora agreed to waive his Miranda rights and speak with us. Mora denied knowledge of the narcotics concealed inside the 2001 Honda Civic. Mora stated that he bought the car from an unknown male individual on Wednesday, July 26, 2017 while attending a party in Tijuana, Mexico. Mora stated that he told this unknown male individual that he was having car trouble, and that the unknown male individual offered to give Mora the 2001 Honda Civic in exchange for his old car and $100.

9. Mora stated that he gave the unknown male individual his telephone number. Mora also stated that another CBP officer had told him that his phone had been ringing, but did not know who had called him.

10. A cursory review of call log for the **Subject Phone** conducted at the border during Mora's interview showed multiple recent calls with a contact saved in the phone as "Luisjt" (664-181-0711). Mora stated that he had known "Luis" (who lived in Tijuana) for about two years. Mora's cell phone log also showed multiple recent calls with a phone number (818-271-7310) that had not been saved as a contact in Mora's cellular phone. Mora first stated that the number belonged to his brother, and then said the number belonged to a friend named "Emanuel Guzman." Mora's cellular phone had a different phone number (818-581-0544) saved as "Emanuel Guzman"; Mora stated that did not know if the saved number (818-581-0544) was still being used by Guzman. Mora stated that he and Guzman were going to a baptism in Paso Robles, California on July 29, 2017.

12. Mora was arrested and later charged with importing methamphetamine, in Case No. 17CR-2282-DMS. On August 10, 2017, Mora pleaded not guilty to that offense.

13. Further queries of the DHS systems revealed that Mora traveled from Mexico into the United States in the 2001 Honda Civic bearing California License Plate No. 7VEU936 for the first time on the date of his arrest. Mora had crossed from Mexico into the United States 10 times between March 27, 2017 and the date of his arrest, and used four different cars (including the 2001 Honda Civic with California License Plate No. 7VEU936) to make these crossings. Specifically, Mora crossed from Mexico into the United States on July 9, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 3UEV808); July 3, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 3UEV808); June 25, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 3UEV808); June 24, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 3UEV808); June 11, 2017 (as the driver and sole occupant of a car bearing California License Plate No.

3

3UEV808); May 29, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 4UIU749); May 21, 2017 (by foot); April 23, 2017 (by foot); and March 27, 2017 (as the driver and sole occupant of a car bearing California License Plate No. 7HIR107).

14. There are various methods of extracting data from a cellular phone: two of them are (1) physical extraction and (2) logical extraction. Physical extraction involves creating an image of the entirety of the phone's memory, including "unallocated" areas where deleted information can be stored. This often permits the recovery of data that has been deleted (such as deleted text messages or photographs), as well as data stored on the phone that is associated with third-party messaging applications (such as Facebook Messenger or Whatsapp). Logical extraction is more limited: it may result in the recovery of "user data" but will not typically result in the recovery of deleted information. (Examples of "user data" include call history, address books, and text messages.) Logical extraction also may not recover data stored on the phone that is associated with third-party messaging applications.

15. Pursuant to the search warrant obtained in 17MJ2898, an HSI forensic analyst attempted to perform a physical extraction of data from the **Subject Telephone**. Due to limitations in the forensic review software available to the analyst at the time, however, that extraction failed because the security software installed on the **Subject Phone** post-dated the forensic review software capabilities. The analyst instead performed logical and file system extractions. As a result, the analyst did not recover any deleted data (if any such data exists). Further, during review of the **Subject Phone**, the analyst saw unread message notifications on both a Facebook Messenger application and an e-mail application. The logical or file system extraction did not recover data from either of those two applications either.

16. The logical extraction did recover non-deleted data from the **Subject Phone**, including call log and contact list entries, SMS messages, MMS messages, GPS locations, and audio files. Based on my review, nothing in this recovered data was

4

facially inculpatory. However, one of the contacts saved in the **Subject Phone** was also found in a cellular phone seized from a different drug-trafficking arrest. Specifically, one of the contacts saved in the **Subject Phone** is "Emanuel Guzman" (818-581-0544). That same phone number was saved as "Manuel Guzman" in a cellular phone seized from Daniel Avila-Barrios, who was arrested at the Otay Mesa Port of Entry on September 25, 2017 when Customs and Border Protection officers found .36 kilograms of methamphetamine in the car that he was driving.

    17.    Through training and experience, I have become familiar with the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities. I know that drug-traffickers commonly use electronic devices such as cellular telephones and computers to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug-trafficking activity.

    18.    Through training and experience, I have also become aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Specifically:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick-up time for their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and

5

posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use their cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

19. Through training and experience, and consultation with other law enforcement officers experienced in investigating drug-trafficking offenses, I have become aware that it is a common practice for narcotics smugglers to delete messages, photographs, call-log entries, and other data that relates to their drug-trafficking activity in an attempt to evade law enforcement.

20. Through training and experience, and consultation with other law enforcement officers, I have also become aware that it is a common practice for drug smugglers to use messaging applications such as Facebook Messenger or Whatsapp to coordinate with their co-conspirators or accomplices.

## Procedures for Electronically Stored Information

21. Following the issuance of this warrant, I will collect the **Subject Phone** and manually inspect the device, and record the process and results using digital photography.

22. Following this manual inspection, I will submit the **Subject Phone** for forensic analysis. I understand that the forensic review software currently available may permit a physical extraction of the data from the **Subject Phone** (i.e., may permit the recovery of all data from the **Subject Phone**, including data that had been previously deleted). All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## Conclusion

24. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Mora used the **Subject Phone** to facilitate the offense of importing and distributing methamphetamine. The **Subject Phone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.

25. Based on my training and experience, there is also probable cause that evidence, fruits, and instrumentalities of illegal activity continue to exist on the **Subject Phone**.

26. Therefore, I respectfully request that the Court issue search warrants authorizing me or other law enforcement agents specially trained in digital evidence recovery, to search the items described in Attachment A to the warrants, and seize the items listed in Attachment B to the warrants.

Donald Sweet
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 21 day of March, 2018.

Hon. Barbara L. Major
United States Magistrate Judge

7

## ATTACHMENT A

The property to be searched is as follows:

One Samsung Galaxy J3 Prime Cellular Telephone
MSISDN: 16615745375
IMEI: 355603085713750

This cellular phone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations secure evidence facility located at the San Diego, California Office.

## ATTACHMENT B

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for the evidence described below. The seizure and search of the cellular/mobile telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data—including but not limited to emails, text messages, photographs, audio files, videos, or location data—for the period between July 1, 2017 and July 29, 2017:

    a.    tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    b.    tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the possession, transportation, importation, and delivery of controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations tending to indicate the preparation or execution of the possession, transportation, importation, and delivery of controlled substances from Mexico to the United States;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above;

All believed to be evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.